# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

JOYCE KEYS,

        Plaintiff(s),

v.

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY,

        Defendant(s).

2:12-CV-1181 JCM (PAL)

### ORDER

Presently before the court is defendant State Farm Mutual Automobile Insurance Company's motion for summary judgment. (Doc. # 12). Plaintiff Joyce Keys filed a response in opposition (doc. # 13), and defendant filed a reply (doc. # 14).

**I.  Background**

This lawsuit arises out of an automobile accident that occurred in Clark County, Nevada, on June 14, 2011. Susan Stevens ("Stevens") rear-ended Joyce Keys ("plaintiff"). Stevens was insured with a bodily injury liability policy, which provided liability limits of $15,000 for each person. Defendant State Farm insured plaintiff, and plaintiff had an underinsured motorist ("UIM") coverage under her own State Farm issued automobile policy. Plaintiff's UIM coverage provided limits of $50,000 for each person. The insurance policy additionally required plaintiff to cooperate with State Farm to determine plaintiff's damages in the event of injuries from an accident covered by the policy

**James C. Mahan**
**U.S. District Judge**

1   and precluded plaintiff from suing defendant until she had fully cooperated.

2   About eight months after the accident, on or about February 12, 2012, plaintiff first notified defendant about a claim on her UIM claim. Plaintiff's demand letter did not specify a date to respond or otherwise have an expiration.

On March 16, 2012, defendant mailed a response to plaintiff's counsel. Defendant's letter informed plaintiff's counsel that it needed additional information to assist in the evaluation of plaintiff's UIM claim. Based on an internal evaluation, defendant determined there were gaps in plaintiff's treatment following the accident and potential pre-existing medical conditions. Additionally, plaintiff had not provided medical records and bills from her caretaker, Southwest Medical Associates.

On April 25, 2012, plaintiff's counsel contacted defendant to inquire about the status of its evaluation of plaintiff's UIM claim. Defendant responded by explaining that it was waiting for plaintiff's medical records and bills from Southwest Medical Associates from her initial visit to the urgent care on the day of the subject accident.

As of May 3, 2012, defendant had reviewed all of the medical records and bills that plaintiff had provided. However, plaintiff still had not provided any records or bills from Southwest Medical Associates. Defendant sent another letter to plaintiff's counsel on the status of the UIM claim.

On May 15, 2012, defendant received plaintiff's medical records and bills from Southwest Medical Associates. The file revealed that plaintiff's chief complaints from the accident were nausea and vomiting. However, the file also indicated that plaintiff had complained of these symptoms dating back to 2008, some three years prior to the accident.

On May 31, 2012, defendant sent a letter to plaintiff's counsel advising plaintiff that it had questions regarding plaintiff's treatment for injuries allegedly related to the accident. Defendant further advised plaintiff that it wanted to move forward with a utilization review (i.e. an expert medical records review) if plaintiff declined defendant's offer of $25,000 to settle plaintiff's UIM claim.

. . .

**James C. Mahan**
**U.S. District Judge**

- 2 -

1   In response, plaintiff filed the instant action in state court. Plaintiff alleged violations of
2   breach of contract and bad faith. Defendant removed the action to federal court. The issue is
3   whether, at this point in time, plaintiff is precluded from bringing a lawsuit against her insurer based
4   on plain and clear language of the contract because she has failed to cooperate with State Farm's
5   requests.

6   **II.   Legal Standard**

7   The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings,
8   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,
9   show that "there is no genuine issue as to any material fact and that the movant is entitled to a
10  judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is
11  "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317,
12  323–24 (1986).

13  In determining summary judgment, a court applies a burden-shifting analysis. "When the
14  party moving for summary judgment would bear the burden of proof at trial, it must come forward
15  with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.
16  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue
17  of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213
18  F.3d 474, 480 (9th Cir. 2000) (citations omitted).

19  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the
20  moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential
21  element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to
22  make a showing sufficient to establish an element essential to that party's case on which that party
23  will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party
24  fails to meet its initial burden, summary judgment must be denied and the court need not consider
25  the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

26  If the moving party satisfies its initial burden, the burden then shifts to the opposing party
27  to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith*
28

**James C. Mahan**
**U.S. District Judge**

- 3 -

1  *Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing
2  party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the
3  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions
4  of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th
5  Cir. 1987).

6  In other words, the nonmoving party cannot avoid summary judgment by relying solely on
7  conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045
8  (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the
9  pleadings and set forth specific facts by producing competent evidence that shows a genuine issue
10 for trial. *See Celotex Corp.*, 477 U.S. at 324.

11 At summary judgment, a court's function is not to weigh the evidence and determine the
12 truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*,
13 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable
14 inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is
15 merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at
16 249–50.

17 **III.  Discussion**

18 "When facts are not in dispute," such as in this case, "contract interpretation is a question of
19 law." *Fed. Ins. Co. v. American Hardware Mut. Ins. Co.*, 124 Nev. 319, 322 184 P.3d 390, 392
20 (Nev. 2008). "An insurance policy is a contract." *Senteney v. Fire Ins. Exch.*, 101 Nev. 654, 656,
21 707 P.2d 1149, 1150 (Nev. 1988). A court "should not rewrite contract provisions that are otherwise
22 unambiguous." *Id.*; *Ellison v. California State Auto. Ass'n*, 106 Nev. 601, 604, 797 P.2d 975, 977
23 (Nev. 1990) ("[C]ontracts will be construed from the written language and enforced as written.").
24 In Nevada, contractual construction is a question of law and "suitable for determination by summary
25 judgment." *Ellison*, 106 Nev. at 603. "Policy terms should be viewed in their plain, ordinary and
26 popular connotations." *American Excess Ins. Co. v. MGM Grand Hotels, Inc.*, 102 Nev. 601, 604,
27 729 P.2d 1352, 1354 (Nev. 1986).

28

James C. Mahan
U.S. District Judge

- 4 -

There are two disputed clauses in the insurance contract between plaintiff and defendant. The court addresses each in turn.

*A.      Cooperation*

In order to recover benefits under the UIM coverage, the policy requires plaintiff to cooperate with defendant's investigation and to satisfy other coverage condition. The policy states in relevant part:

> The insured must cooperate with us and, when asked, assist us in . . . securing and giving evidence . . .
>
> A person making a claim under . . . unisured motor vehicle coverage . . . must: (1) notify us of the claim and give us all the details about the death, injury treatment, and other information that we may need as soon as reasonably possible after the injured insured is first examined or treated for the injury. . . (3) provide written authorization for us to obtain medical bills; medical records; wage, salary, and employment information; and any other information we deem necessary to substantiate the claim.

(Doc. # 12, Exh. C, State Farm policy at p. 25-26).

"When an insurance policy explicitly makes compliance with a term in the policy a condition precedent to coverage, the insured has the burden of establishing that [he or she] complied with that term." *Las Vegas Metro. Police Dep't. v. Coregis Ins. Co.*, 256 P.3d 958, 962 (Nev. 2011); *Schwartz v. State Farm Mut. Auto. Ins. Co.*, no. 2:07-cv-00060-KJD-LRL, 2009 WL 2197370, at *7 (D. Nev. July 23, 2009) ("Nevada law clearly enforces coverage conditions . . . .").

The clear and unambiguous terms of plaintiff's contract with defendant imposed certain obligations, such as plaintiff's obligation to cooperate with defendant's investigation of her UIM claim. After defendant received notice from plaintiff that she would be pursuing a UIM claim, defendant began to investigate the claim (which included plaintiff's injuries).

Defendant notified plaintiff that it needed additional information, such as certain medical bills and records, to fully evaluate plaintiff's claims. Specifically, defendant wanted to investigate certain gaps in plaintiff's treatment and pre-existing medical conditions and symptoms that dated back to 2008. Instead of providing all the materials so that defendant could review them, plaintiff filed the instant lawsuit.

. . .

James C. Mahan
U.S. District Judge

1  Defendant never received the opportunity to review the extent of plaintiff's post-accident
2  treatment, and determine, how much, if any, of the treatment was related to the subject accident
3  versus how much, if any, of the treatment resulted from plaintiff's prior condition(s). Plaintiff never
4  cooperated with defendant and therefore never complied with the clear terms of the policy and is
5  precluded from bringing the instant action.

6        B.      *Commencement of Legal Action*

7  Plaintiff's insurance contract with defendant precluded an insured from bringing legal action
8  or demanding arbitration until the insured had fully complied with any obligations under the contract.
9  The contract states in relevant part:

10      Legal action may not be brought against, nor may arbitration be demanded of, us until there has been full compliance with all the provisions of this policy.
11

12  (Doc. # 12, Exh. C, State Farm policy at p. 29).

13  Under Nevada law, if an insurance contract plainly states that an insured may not bring a
14  lawsuit against an insurance provider until all terms of the contract are satisfied, then, simply, an
15  insured may not bring a lawsuit against his or her insurance provider until he or she satisfies any
16  conditions of coverage. *See Las Vegas Star Taxi, Inc. v. St. Paul Fire & Marine Ins. Co.*, 102 Nev.
17  11, 12, 714 P.2d 562, 562-63 (Nev. 1986) ("Indeed, the policy not only specifies that notice is a
18  condition of coverage, it also provides that no legal action may be brought against the insurer unless
19  the insured has complied with the contract terms. The policy is unambiguous in this regard.");
20  *Schwartz*, 2009 WL 2197370, at *8 ("Plaintiff's unjustified refusal to submit the reasonable request
21  for an [independent medical evaluation], coupled by an immediate filing of a lawsuit, therefore,
22  precludes her from recovery under the policy.").

23  The clear terms of this policy required plaintiff to cooperate with defendant's request in
24  evaluating a UIM claim. Plaintiff failed to do so and does not argue to the contrary. The contract
25  also states that an insured is precluded from brining a lawsuit unless he or she complies with certain
26  conditions, including an obligation to cooperate with the insurer's requests to produce medical
27  records and bills so that it could fully evaluate the claim. Plaintiff is barred from bringing suit.
28

**James C. Mahan**
**U.S. District Judge**

- 6 -

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendant State Farm's motion for summary judgment (doc. # 12) be, and the same hereby, is GRANTED.

IT IS FURTHER ORDERED that defendant shall submit an appropriate judgment consistent with this order.

DATED June 21, 2013.

_____
UNITED STATES DISTRICT JUDGE